IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE T. RADER,** : | **CIVIL ACTION** |
| Plaintiff : | |
| : | |
| v. : | |
| : | |
| **WHITEHALL/COPLAY** : | |
| **SCHOOL DISTRICT,** : | |
| Defendant. : | **No. 07-1470** |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                         JUNE 18, 2008

Michelle T. Rader initiated this action against the Whitehall/Coplay School District (the "School District"), alleging claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a) and 3(a), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 955. Currently pending before the Court is the School District's motion for summary judgment as to all of Ms. Rader's claims. Because Ms. Rader has failed to establish a prima facie case of either "hostile work environment" discrimination or retaliation, the School District's motion for summary judgment must be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are undisputed. Ms. Rader was employed by Orthopaedic Associates of Allentown ("OAA") as a certified athletic trainer. (Def. Statement of Facts ¶ 1; Pl. Response ¶ 1.) Ms. Rader entered into an employment contract with OAA, which provided that "OAA will determine Employee's specific duties and responsibilities and the days and hours that Employee is required to work." (Def. Statement of Facts ¶¶ 2-3; Pl. Response ¶¶ 2-3.) The contract also provided that Ms. Rader could not "enter into or continue any employment or render any service

for compensation or remuneration to any other person or entity during [her] employment with OAA." (Def. Statement of Facts ¶ 4; Pl. Response ¶ 4.)  Ms. Rader's job performance was evaluated by OAA and she was paid salary and benefits by OAA. (Def. Statement of Facts ¶ 5; Pl. Response ¶ 5.)

OAA and the School District entered into a contract through which OAA agreed to provide athletic trainer services to the School District.  (Def. Statement of Facts ¶ 6; Pl. Response ¶ 6.)  The contract between OAA and the School District stated that "each qualified athletic trainer whose services are supplied hereunder shall at all times remain an employee of [OAA] and shall in no way be deemed to be an employee of the School."  (Def. Statement of Facts ¶ 7; Pl. Response ¶ 7.)  The contract further stated that the School District would not indemnify or defend OAA for any claims of liability (with limited exceptions that do not apply here).  (Def. Statement of Facts ¶ 8; Pl. Response ¶ 8.)

While contracted and in the employ of OAA, Ms. Rader was assigned to work at the School District to take care of high school students who participated on scholastic sports teams.  (Def. Statement of Facts ¶¶ 9-10; Pl. Response ¶¶ 9-10.)  Based on the record submitted by the parties, it appears that Ms. Rader spent the bulk of her time at the athletic "field house," where she tended to the student-athletes.

On April 19, 2004, Ms. Rader made an oral complaint of sexual harassment to Robert Hartman, Athletic Director at the School District, naming Anthony Zangari, a custodian employed by School District, as the harasser.  (Def. Statement of Facts ¶¶ 11-12; Pl. Response ¶¶ 11-12.)  Ms. Rader alleged that Mr. Zangari harassed her by making inappropriate comments, giving her a red rose for her birthday, discussing inappropriate relations with her, attempting to

2

show her pornography, telling her he wanted to see her wear shorts, driving past her home to see her gardening in a sports bra, telling her she was the "hottest" trainer, and telling her that she had better legs than Brittany Spears.  (Def. Statement of Facts ¶ 13; Pl. Response ¶ 13.)  Ms. Rader reported that Mr. Zangari never attempted to nor did he have any physical contact with her.  (Def. Statement of Facts ¶ 14; Pl. Response ¶ 14.)

The School District has a policy prohibiting unlawful harassment.  (Def. Statement of Facts ¶ 15; Pl. Response ¶ 15.)  Mr. Zangari received a copy of the policy and was aware of the policy.  (Def. Statement of Facts ¶ 16; Pl. Response ¶ 16.)

Following Ms. Rader's April 19, 2004 complaint, Mr. Hartman immediately convened an investigation into her allegations.  (Def. Statement of Facts ¶ 17; Pl. Response ¶ 17.)  He promptly contacted other School District administrators to form an investigative team, including Phil Bankos, Assistant Supervisor of Maintenance, Jim Davis, Building Principal, Rich Legath, Supervisor of Maintenance,[1] and Gary Behr, Director of Operations and Transportation.  Randy Rice, Director of Personnel Management and Pupil Services, was added to the investigative team at a later time.  (Def. Statement of Facts ¶ 18; Pl. Response ¶ 18.)

Mr. Zangari was immediately removed from the field house while Ms. Rader met with the School District administrators.  (Def. Statement of Facts ¶ 20; Pl. Response ¶ 20.)  On April 20, 2004, Ms. Rader provided a written complaint of sexual harassment to the School District administrators investigating her complaint, in which she described in detail Mr. Zangari's offensive behavior.  (Def. Statement of Facts ¶ 21; Pl. Response ¶ 21.)

---

[1] Even though Mr. Legath was home from work on a vacation day, Mr. Hartman contacted him and he came to a meeting convened to listen to Ms. Rader's complaint.  (Def. Statement of Facts ¶ 19; Pl. Response ¶ 19.)

On April 20, 2004, School District administrators questioned Mr. Zangari regarding Ms. Rader's allegations, and established that he was aware of the School District's policy proscribing unlawful harassment. (Def. Statement of Facts ¶ 22; Pl. Response ¶ 22.). While he initially denied Ms. Rader's allegations, Mr. Zangari eventually admitted that he made the "Brittany Spears" comment, that he drove by Ms. Rader's house on occasion and that he made other comments which she may have taken "the wrong way." (Def. Statement of Facts ¶ 23; Pl. Response ¶ 23.)

On April 21, 2004, School District administrators questioned Jim Sebasta (Assistant Track Coach), Mark Dobil (Assistant Track Coach), Steve Shear (Middle School trainer) and Stacy Pitten (Athletic Department secretary). The administrators concluded that none of these individuals witnessed first-hand any of the conduct underlying Ms. Rader's complaints. (Def. Statement of Facts ¶ 24; Pl. Response ¶ 24.) On April 22, 2004, Mr. Zangari provided a letter to the School District apologizing for his actions. (Def. Statement of Facts ¶ 25; Pl. Response ¶ 25.)

On April 28, 2004, the School District concluded their investigation and provided to Ms. Rader and Mr. Zangari a "summary and conclusions of alleged harassment investigation." (Def. Statement of Facts ¶ 26; Pl. Response ¶ 26.) The investigative team found that Mr. Zangari violated the School District's unlawful harassment policy. (Def. Statement of Facts ¶ 27; Pl. Response ¶ 27.) Accordingly, the investigative team recommended, and the School District administered, the following remedial measures: (1) Mr. Zangari was instructed to cease making any sexually harassing comments to, and avoid any interactions with, Ms. Rader; (2) Mr. Zangari's work schedule was modified to 6:00 a.m. to 2:00 p.m. and he was instructed to leave

the field house immediately at 2:00 p.m., i.e., prior to when Ms. Rader was scheduled to arrive at the field house during the week; (3) Mr. Zangari was reminded that retaliation is illegal and would be cause for further discipline; and (4) Mr. Zangari was reminded that all employees are responsible to respect the rights of other staff members and ensure an atmosphere free from all forms of unlawful harassment. (Def. Statement of Facts ¶ 28; Pl. Response ¶ 28.)

The School District shared with Ms. Rader the results of their investigation and the remedial measures taken to alleviate the situation. (Def. Statement of Facts ¶ 29; Pl. Response ¶ 29.) In her deposition, Ms. Rader testified that the remedial measures put in place by the School District were acceptable. (Def. Statement of Facts ¶ 30; Pl. Response ¶ 30.)

On November 23, 2004, seven months after Ms. Rader first complained about the harassment and after the School District had implemented remedial measures, Ms. Rader made a written complaint that she saw Mr. Zangari's car on campus at the same time that she planned to work at the field house. (Def. Statement of Facts ¶ 31; Pl. Response ¶ 31.) Ms. Rader stated in her written complaint that prior to this date the "arrangement seemed to be working fine, except for a few scheduling situations in June, July and August." (Def. Statement of Facts ¶ 32; Pl. Response ¶ 32.) Ms. Rader stated that she did not want Mr. Zangari on campus at any time that she was scheduled to be there. (Def. Statement of Facts ¶ 33; Pl. Response ¶ 33.) However, Ms. Rader did not complain that Mr. Zangari was doing anything improper other than simply being present on campus at the same time that she was on campus. (Def. Statement of Facts ¶ 34; Pl. Response ¶ 34.)

On December 6, 2004, Ms. Rader's attorney also wrote a letter to Randy Rice reiterating the same complaints Ms. Rader had raised in her November 23, 2004 letter. (Def. Statement of

Facts ¶ 35; Pl. Response ¶ 35.)  On December 9, 2004, the School District held a meeting with Ms. Rader, Donald Kichline (her supervisor from OAA), and Messrs. Hartman, Bankos, Legath and Rice to discuss Ms. Rader's November 23, 2004 letter.  (Def. Statement of Facts ¶ 36; Pl. Response ¶ 36.)  The School District conducted another investigation into Ms. Rader's allegations.  On December 10, 2004, the School District implemented a revised work schedule for Mr. Zangari intended to alleviate scheduling conflicts specifically to ensure that Mr. Zangari's and Ms. Rader's work hours would not overlap.  (Def. Statement of Facts ¶ 37; Pl. Response ¶ 37.)

After she lodged her initial written complaint in April 2004, Ms. Rader testified that Mr. Zangari did not harass her in any way.  (Def. Statement of Facts ¶ 38; Pl. Response ¶ 38.)  Ms. Rader testified that after she complained on April 19, 2004 and the School District investigated her complaint, all allegedly harassing conduct by Mr. Zangari ceased.  (Def. Statement of Facts ¶ 39; Pl. Response ¶ 39.)

Ms. Rader testified that she heard rumors that Mr. Hartman wanted to "get rid" of her.  However, Ms. Rader stated that she did not believe that these rumors were related to her sexual harassment complaints.  (Def. Statement of Facts ¶ 40; Pl. Response ¶ 40.)

Ms. Rader filed a complaint with the EEOC on November 23, 2005.  (Def. Statement of Facts ¶ 41; Pl. Response ¶ 41.)  Ms. Rader last worked for OAA in June 2006. (Def. Statement of Facts ¶ 42; Pl. Response ¶ 42.)  For reasons that are not entirely clear, Ms. Rader did not re-sign a contract with OAA.  (Def. Statement of Facts ¶ 43; Pl. Response ¶ 43.)  However, Ms. Rader admits that her separation from her employment with OAA had nothing to do with School District.  (Def. Statement of Facts ¶ 44; Pl. Response 44.)

Ms. Rader initially filed her complaint in state court, and the School District removed the action to federal court, where it was assigned to this Court's docket.  After discovery concluded, the School District moved for summary judgment with respect to all of Ms. Rader's claims.  In its motion, the School District argues that summary judgment is appropriate because:  (1) Ms. Rader failed to file her administrative complaint with the EEOC within 300 days of the alleged harassment, rendering her federal cause of action time barred; (2) the School District was not her "employer" and there was no "employment relationship" for purposes of imposing liability under Title VII; (3) Ms. Rader has failed to establish "employer liability" in that she has not produced any evidence that the School District's action or inaction constitutes a violation of Title VII or the PHRA; and (4) Ms. Rader is not entitled to punitive damages because punitive damages may not be sought against a local school district.  Ms. Rader concedes the defense argument with respect to punitive damages, but opposes the defense motion on all other grounds.

**JURISDICTION**

The Court has jurisdiction over Ms. Rader's federal claims pursuant to 28 U.S.C. § 1331, and over her state-law claims pursuant to 28 U.S.C. § 1367(a).

**LEGAL STANDARD**

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment can be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843

F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury possibly could hold in the non-movant's favor with regard to that issue. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" only if it could affect the result of the suit under governing law. <u>Id.</u>

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 217, 322 (1986); <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. <u>Celotex</u>, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." <u>Walden v. Saint Gobain Corp.</u>, 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (<u>citing</u> <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976)).

**DISCUSSION**

The School District has raised two preliminary and procedural arguments – statute of limitations as a bar and lack of an "employment relationship" between Ms. Rader and the School District – as to why, in its view, summary judgment should be granted. However, even assuming

that Ms. Rader would be able to overcome Defendant's arguments on these points (issues that the Court declines to address), the School District's motion must be granted because Ms. Rader has failed to establish a prima facie case of "hostile work environment" discrimination or retaliation under Title VII or the PHRA.

I.   **Ms. Rader Has Failed to Establish a Prima Facie Case of "Hostile Work Environment" Discrimination**

Title VII forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). One form of discrimination prescribed by Title VII is so-called "hostile work environment" discrimination based on, for example, gender, race, national origin or religion. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (gender); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986) (gender); Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (race); Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2005) (national origin); Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276-77 n.5 (3d Cir. 2001) (religion). "The statutory basis for these claims is the notion that discriminatory ridicule or abuse can so infect a workplace that it alters the terms or conditions of the plaintiff's employment." Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) (citing Meritor, 477 U.S. at 67).

In order to prevail on a hostile environment claim on the basis of gender, Ms. Rader must prove five elements: that (1) she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for

employer liability is present. Jensen, 435 F.3d at 449.[2]  The School District focused only on the fifth element of this test, and the Court will do so as well.

"An employer will be liable for the harassing conduct of the alleged victim's coworker if the employer was 'negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment.'" Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007) (quoting Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997) (citing Bouton v. BMW of N. Am., Inc., 29 F.3d 103, 106 (3d Cir. 1994))).  An employer is negligent if it "knew or should have known about the harassment, but failed to take prompt and adequate remedial action." Jensen, 435 F.3d at 453 (internal quotations omitted).  When the alleged harasser is a co-worker (as opposed to a supervisor) and the employer was aware of the alleged harassment, a plaintiff must establish that the employer failed to take appropriate remedial action.  Weston v. Pennsylvania, 251 F.3d 420, 427 (3d Cir. 2001).  Even if the remedial action taken by the employer does not stop the alleged harassment, it is "adequate" – and there is no basis for employer liability – if it is "reasonably calculated" to end the harassment.  Jensen, 435 F.3d at 453 (quoting Knabe v. Boury Corp., 114 F.3d 407, 412-13 (3d Cir. 1997)); see also Andreoli, 482 F.3d at 644.  "A remedial action that stops the harassment is adequate as a matter of law." Andreoli, 482 F.3d at 644 n.2; see also Knabe, 114 F.3d at 411 n.8 ("A remedial action that effectively stops the harassment will be deemed adequate as a matter of law."); Jensen, 435 F.3d

---

[2] Employer liability under the PHRA follows the standards set out for employer liability under Title VII.  See Hoy v. Angelone, 691 A.2d 476 (Pa. Super. Ct. 1997); see also West v. Phila. Elec. Co., 45 F.3d 744 (3d Cir. 1995) (utilizing Title VII standards in case involving PHRA hostile work environment claim); Knabe v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997).  Thus, the standards discussed here apply equally to Ms. Rader's claims under Title VII and the PHRA.

at 453 (employer action was "adequate" because it stopped the harassment); Weston, 251 F.3d at 427 (no liability where employer action stopped the harassment).

In this case, it is undisputed that the School District took prompt remedial action in response to Ms. Rader's sexual harassment complaint. The School District received Ms. Rader's oral complaint on April 19, 2004, and received her written on complaint the very next day. On that very day, the School District convened a meeting, formed a team to investigative Ms. Rader's complaints, and on April 28, 2004, less than 10 days later, the investigative team issued its findings and conclusions and recommended remedial measures, pursuant to which Ms. Rader's and Mr. Zangari's work shifts would not overlap. The School District implemented the recommended remedial measures immediately. In addition, it is undisputed that the remedial measures implemented by the School District were effective in that such measures stopped the harassment. Indeed, at her deposition Ms. Rader candidly testified that after she initially reported Mr. Zangari's harassing behavior to School District administration in April of 2004, and the School District took remedial action immediately thereafter, any and all harassment by Mr. Zangari ceased. (M. Rader Dep., Oct 2, 2007, 39:5-16.) In short, there is no evidence in the record that Mr. Zangari harassed Ms. Rader, or that Ms. Rader ever actually saw Mr. Zangari himself, after April 19, 2004. As a matter of law, therefore, the remedial measures taken by the School District were "adequate," and there is no basis for employer liability in this case.

Nonetheless, Ms. Rader claims that she has established a prima facie case of "hostile work environment" discrimination because the remedial action taken by the School District was "unacceptable" to her. (Pl. Mem. Opp'n 14.) Ms. Rader offers a single incident in support of her argument, claiming that when she arrived to work one day during the fall of the 2004-2005

11

school year at approximately 2:00 p.m., she saw Mr. Zangari's car parked in the school parking lot.  According to Mr. Zangaris' revised work schedule, which was implemented the prior spring as part of the remedial measures, Mr. Zangari was supposed to vacate the school grounds prior to 2:00 p.m. so that his schedule would not overlap with Ms. Rader's work schedule.  Thus, his vehicle should not have been parked in the lot at 2:00 p.m. on that particular day.

Upon reporting this incident to administrators, the School District administrators informed Ms. Rader they had changed Mr. Zangari's schedule, and that if she needed to get into the field house while Mr. Zangari was present, the School District would provide her an escort. It appears that Ms. Rader found this proposal to be unacceptable.  However, Ms. Rader does not claim that she actually saw Mr. Zangari himself - as opposed to just seeing his car – at the school on that particular day.  Moreover, there is no evidence in the record that Ms. Rader ever actually saw Mr. Zangari at the school or had any contact with him whatsoever following the parking lot incident.  Instead, the undisputed record evidence indicates that Mr. Zangari's harassment of Ms. Rader ceased following her April 2004 complaint and never resumed.  Therefore, while Ms. Rader deemed the School District's remedial measures in part to be "unacceptable," because such measures nonetheless were wholly effective at stopping the harassment, they are "adequate" as a matter of law.  Accordingly, the defense motion for summary judgment will be granted as to Ms. Rader's "hostile work environment" claim.

**II.     Ms. Rader Has Failed to Establish a <u>Prima</u> <u>Facie</u> Case of Retaliation**

Both Title VII and the PHRA contain separate anti-retaliation provisions.  Title VII forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified,

assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a); see Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 56 (2006). To establish a prima facie case of retaliation under Title VII, Ms. Rader must show that (1) she engaged in protected activity, (2) the defendant took a "materially adverse" action against her, and (3) there was a causal connection between Ms. Rader's protected activity and the employer's action. See Moore v. City of Phila., 461 F.3d 331, 341-42 (3d Cir. 2006). The PHRA contains equivalent prohibitions, and the analysis governing retaliation claims under both Title VII and the PHRA is the same. See 43 Pa. Cons. Stat. § 955(d); Slagle v. County of Clarion, 435 F.3d 262, 265 n.5 (3d Cir. 2006); Pollard v. George S. Coyne Chem. Co., No. 07-3744, 2008 U.S. Dist. LEXIS 40478, at *21 n.20 (E.D. Pa. May 19, 2008).

The Supreme Court defined "materially adverse" in this context to mean "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (citations and internal quotation marks omitted); Moore, 461 F.3d at 341. Material adversity is "important to separate significant from trivial harms," Burlington, 548 U.S. at 68, because, as the Supreme Court has stated, "Title VII . . . does not set forth 'a general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Stated differently, a plaintiff may meet her burden by demonstrating that her employer's conduct is "likely to deter victims of discrimination from complaining to the EEOC." Id. (internal quotation and citation marks omitted). "[P]etty slights, minor annoyances, and simple lack of good manners" normally are not sufficient to deter a reasonable person. Id.

The School District argues that Ms. Rader has not established that she suffered any

tangible "employment action" taken by the School District, let alone a "materially adverse" action. The Court agrees.

Ms. Rader asserts that Matthew Ernst, a maintenance man employed by the School District, informed Ms. Rader that he had heard that Mr. Hartman was trying to "get rid" of her. (M. Rader Dep. 42:14-25, Oct. 2, 2007.) According to Ms. Rader, Phil Armstrong, a teacher employed by the School District, also confirmed that he had heard rumors of this nature.[3]

However, there is no indication in the record as to when Ms. Rader's conversations with Mr. Ernst or Mr. Armstrong occurred. Other than these two individuals reporting what they had allegedly "heard," there is no non-hearsay evidence in the record indicating that Mr. Hartman actually did want to terminate Ms. Rader's employment. There also is no evidence in the record that Mr. Hartman, or anyone else employed by the School District, actually did "get rid" of Ms. Rader, or took any affirmative steps directed at terminating or otherwise altering her employment relationship with the School District.

In her opposition papers, Ms. Rader states that her last day of employment at the School District was June 5, 2006, which was more than two years after she lodged her sexual harassment complaint in April 2004. Therefore, she worked at the School District for two full academic years following her April 2004 complaint. At her deposition, Ms. Rader explained that she ceased working for the School District in June 2006 because the school year had concluded. (M. Rader Dep. 35:12-21.) In addition, she delivered a child in June 2006 and took some period of leave under the Family and Medical Leave Act ("FMLA") after that date. (Pl. Response ¶¶ 43-

---

[3] At her deposition, Ms. Rader testified that when Mr. Ernst informed her of the rumors that Mr. Hartman wanted to "get rid" of Ms. Rader, she responded by stating, "well, I'm not an employee of the school district and whatever happens happens." (M. Rader Dep. 42:-25-43:1.)

44.) While she was on FMLA leave, she terminated her employment contract with OAA. Ms. Rader states that she thought she could return to work part-time after having her baby. (Pl. Response ¶ 44.)

In sum, there is no evidence in the record that would permit the inference that the School District, as opposed to OAA, took any "adverse employment action" against Ms. Rader. The record does clearly establish that OAA terminated its employment relationship with Ms. Rader by letter dated June 7, 2006. (Def. Ex. 13.)[4] The record is not clear as to precisely why Ms. Rader terminated her contract with OAA. However, the reasons underlying her reasons for terminating her employment contract with OAA largely are irrelevant absent some evidence – of which there is none – that the School District terminated its contractual arrangement with OAA, or that OAA, in turn, terminated its contractual arrangement with Ms. Rader <u>because of</u> her complaints of sexual harassment. In fact, Ms. Rader's own testimony belies any such possibility. At her deposition, Ms. Rader testified that she did not believe that the School District's alleged wanting to "get rid" of her was related to her sexual harassment complaints. (M. Rader Dep. 43:8-11.)[5] No other evidence in the record implies any connection between the termination of OAA's contractual relationship with Ms. Rader and Ms. Rader's complaints of sexual harassment to the School District.

---

[4] In this letter, OAA stated that it had offered Ms. Rader continued employment as an athletic trainer but that Ms. Rader "refused OAA's offer." (Def. Ex. 13.) Accordingly, the letter acknowledged OAA's understanding that Ms. Rader's employment with OAA would terminate effective June 14, 2006.

[5] At her deposition, when defense counsel asked Ms. Rader why Mr. Hartman would want to get rid of her, she stated "[w]ell, no, I don't know why. I just – that didn't start until after I started making complaints that [Mr. Zangari] continued to work with me." (M. Rader Dep. 43:12-16.)

Because Ms. Rader has failed to establish that the School District took any "materially adverse" action with respect to her employment, she has failed to establish a prima facie case of retaliation. Accordingly, the School District's motion for summary judgment will be granted as to Ms. Rader's retaliation claim as well.

**CONCLUSION**

For the reasons provided above, the Court finds that Ms. Rader has failed to establish a prima facie case of "hostile work environment" discrimination or retaliation. Accordingly, the School District's motion for summary judgment will be granted.

An Order consistent with this Memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE T. RADER,** | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **WHITEHALL/COPLAY** | : | |
| **SCHOOL DISTRICT,** | : | |
| Defendant. | : | No. 07-1470 |

**O R D E R**

    **AND NOW**, this __ day of June, 2008, upon consideration of Defendant Whitehall/Coplay School District's Motion for Summary Judgment (Docket No. 11), and Plaintiff Michelle T. Rader's response thereto (Docket No. 12), for the reasons discussed in the accompanying Memorandum, **IT IS ORDERED** that:

1. Defendant's Motion for Summary Judgment (Docket No. 11) is **GRANTED**.

2. The Clerk of Court shall enter a judgment in favor of Defendant Whitehall/Coplay School District and against Plaintiff Michelle T. Rader.

3. The hearing previously scheduled for July 10, 2008 is **CANCELLED**.

4. The Clerk of Court shall mark this case **CLOSED** for all purposes, including statistics.

                                                              BY THE COURT:

                                                              S/Gene E.K. Pratter
                                                              GENE E.K. PRATTER
                                                              United States District Judge